IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATIONWIDE PROPERTY AND              :        CIVIL ACTION
CASUALTY INSURANCE COMPANY           :
                                     :
   v.                                :
                                     :
KAREN MATTIS, *et al.*               :        NO. 12-CV-6130

## MEMORANDUM OPINION

Ditter, J.                                                    May 6, 2014

      In this case, the plaintiff, Nationwide Property and Casualty Insurance Company ("Nationwide") seeks a declaratory judgment defining its obligations under a homeowner's insurance policy issued to the defendants, Karen and B. Robert Mattis, and their son, Robert Mattis. The Mattis family has filed a claim for significant damages to their home caused by an overflowing sink.

      At the conclusion of discovery, Nationwide filed this motion for summary judgment claiming it has no duty to cover this damage or indemnify the Mattis family as a matter of law because the family failed to notify Nationwide of the loss in a timely manner as required by the insurance agreement. Nationwide contends further that, as the result of the delay in notice, it was unable to view the property in its damaged condition, and therefore were unable to determine the validity of the claim or otherwise ascertain what damage was attributable to the flooding and what might be excluded from coverage. The Mattis family contend they complied with the notice provision of the insurance contract and that summary judgment cannot be granted because there are material facts at

issue that must be resolved in order to determine Nationwide's obligations under the insurance policy.  For the reasons that follow, this motion is denied.

1. <u>Factual Background</u>[1]

The Mattis family purchased a homeowner's insurance policy for their property located at 30 Deborah Road, Richboro, Pennsylvania, on September 21, 2011.  The family has owned and lived in this home since 1975.  At some point during the night of November 18, 2011, B. Robert Mattis, who suffers from memory loss, got up from bed and turned on the kitchen faucet.  He did not turn off the faucet before returning to bed.  As a result, the water ran until 7:00 a.m., causing the sink to overflow[2] and flood the entire first floor of the home.  The family asserts the water was running for a maximum of eight hours.

Initially, Robert Mattis attempted to dry the home using a Shop Vac.  Soon thereafter, he contacted his childhood friend, Mike Johnson, who owns H.C. Site Construction, Inc. for help.  Johnson viewed the damage and recommended the family contact Alliance Adjustment Group, a public adjuster.

On November 21, 2011, the family hired Alliance to represent them in this claim and signed a 30% contingency fee agreement with Alliance.  Alliance inspected the home on multiple occasions, and took photographs of the damage prior to completion of the

---

[1] These facts are from the parties' joint stipulation of facts unless otherwise noted.

[2] The water did not drain because the sink was full of dishes.

mitigation, repair and/or replacement work.  The record includes photographs taken by Alliance on its initial, November 21 inspection.  The photographs show that remediation had not been completed: drywall was not removed, carpet was not removed, personal property was still in the house and professional drying equipment had not been set up.

The remediation work was invoiced on November 29, 2011, and included the following:

- removing furniture, appliances, and other personal property from the home and placing same outside;

- removing all carpet and vinyl flooring from the first floor;

- removing all kitchen base cabinets;

- removing the downstairs' powder room vanity and toilet;

- removing 4' of drywall throughout the first floor of the home; and

- removing portions of exterior siding.

Thereafter, Alliance filed a claim for $204,711.73 ($120,511.64 for the structure and $84,200.00 for personal property).  The ten page claim is undated.

Nationwide was not notified of the loss until December 6, 2011, when it received a loss claim from Alliance.  By that time, H.C. Site Construction had completed all of its mediation work.  As a result, Nationwide was unable to inspect the damage as it occurred in order to determine what if any of the loss is covered by the insured's policy.

2. Standard of Review

The standard for summary judgment is well established.  I must consider the

3

evidence in a light most favorable to the non-moving party and, if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion.

    3.  <u>Discussion</u>

    The issue before me is whether the Mattis family voided its insurance agreement with Nationwide when they delayed notifying their insurer of the loss and completed remediation without the insurer having had an opportunity to inspect the loss.  Thus, I turn to the notice provisions of the parties' insurance agreement.  *See Compl.,* Exh. 2.

    The agreement lists the following as the insured's duties after loss: 1) give *immediate* notice to Nationwide or its agent; 2) protect the property from further damage; 3) show Nationwide the damaged property; and 4) submit a signed, sworn proof of loss statement.  *See Compl.,* Exh. 2, page 20, ¶ 3. (Emphasis added).  Nationwide contends the clear language of the policy requires immediate notice and that such notice is a condition precedent to coverage.  The Mattis family contend they did all that was required by the insurance agreement by contacting HC Site Construction for mitigation services, retaining Alliance Adjustment Group to represent them on this claim, and notifying Nationwide of the claim.  They contend their contractual obligation to mitigate damages necessitated the actions they took and that they adequately documented the condition of the property after

the flooding.

Any reasonable finder of fact would conclude that notice eighteen days after the flooding occurred is not immediate. However, even if the delay in notice is a material breach of the insurance agreement, Nationwide must also establish that it suffered actual prejudice as a result of the breach in order to be relieved of its obligations under the policy. *Brakeman v. Potomac Ins. Co.*, 371 A. 2d 193, 198 (Pa. 1977).

In support of its claim of actual prejudice, Nationwide cites *Berko Investments, LLC v. State National Insurance Co., Inc.*, 2010 U.S. Dist. LEXIS 73144 (E.D. Pa. 2010). In *Berko*, the court applied *Brakeman's* two-prong test to find that late notice was a breach of the contract and that the breach resulted in actual prejudice. Nationwide then compares the facts in *Berko* to the facts in this case.

In *Berko*, the insured discovered a roof leak and had the roof replaced before advising his insurer of the claim two weeks later. The court found that the insured's conduct caused actual prejudice to the insurer becaue not reporting the loss until the roof had been replaced "prevented the insurer from inspecting the roof and determining the cause and origin of the damage and what repairs were required." *Id.* at 13-14.

While *Berko* and this case have similar facts that may lead to the same conclusion, there is a significant difference in the procedural posture of the cases. I am considering the merits of a motion for summary judgment and *Berko* was decided following a non-jury trial. In *Berko*, the court heard and considered the testimony of the witnesses and

other evidence offered at trial and then made a series of factual findings that led to the finding of prejudice; including, that an initial temporary fix had been made that was sufficient to protect the property and still permit an investigation in the cause and origin of the loss. Such findings cannot be made on a motion for summary judgment.

At trial, the jury will have the opportunity to hear the testimony of the members of the Mattis family, view pictures of their home immediately after the flooding, and at various stages of remediation and consider any other evidence offered at trial.[3] The jury will be make credibility determinations and weigh the evidence to determine the validity of the claim, the timeliness of the notice, and whether Nationwide was able to conduct a meaningful investigation of the claim. Ultimately, Nationwide may obtain the same result as that reached in *Berko*, but a trial will be necessary to do so.

4. Conclusion

Where there are issues of material fact that must be determined, summary judgment must be denied. Here, there are numerous issues of fact that need to be resolved prior to finding actual prejudice resulting from the delay in notice. Therefore, summary judgment will be denied.

An appropriate order follows.

---

[3] As set forth by Nationwide, the photographs taken before remediation show a deteriorated and run-down home, pre-existing damage on the ceiling and other unrelated leaks – evidence that can be used to challenge this claim